Adams and others v. Addington and another.*

(*Circuit Court, N. D. Texas.* January, 1883.)

1. Promissory Note—Provision for Attorney's Fees.
   A promissory note containing a provision to the effect, "and in case of legal proceedings on this note, agree to pay 10 per cent. of the amount for attorney's fees," is negotiable under the law-merchant. See 14 Fed. Rep. 667 *et seq.*

2. Discontinuance.
   Plaintiff having sued both the indorsers and the makers of a promissory note, had the right to discontinue the action as to the indorsers, although the defendant had set up certain equities as existing between them and the indorsers.

On Application for Leave to File a Motion for a New Trial.

This suit was instituted against J. P. and Z. T. Addington, as the makers, and Mulhall & Scaling, as the indorsers, on a promissory note, of which the following is a copy:

"GAINESVILLE, TEXAS, November 8, 1880.

"Seven months after date ———, or either of us, promise to pay to Mulhall & Scaling, or order, ten thousand eight hundred and ninety-one 67-100 dollars, at the office of Putman, Chambers & Co., in Gainesville, Texas, for value received, with interest at the rate of 1 per cent. per month after maturity until

*Reported by Joseph P Hornor, Esq., of the New Orleans bar.

paid, and in case of legal proceedings on this note, agree to pay 10 per cent. of the amount for attorney's fees.

[Signed]                  " J. P. ADDINGTON.

"$10,891.67.                 " Z. T. ADDINGTON.

Indorsed: "MULHALL & SCALING."

Upon the trial of the case it was shown by the testimony of the makers that the note was executed for the purpose of being negotiated at the bank in Gainesville, and that the negotiation failed because the makers could not or would not give indorsers satisfactory to the bank. The court permitted the plaintiffs to discontinue the suit as to the indorsers, without prejudice to any of the rights or equities between the makers and indorsers. Judgment was rendered in favor of the plaintiffs, against the makers of the note, for the amount, principal, interest, and 10 per cent. of the principal for attorney's fees.

The defendants moved for a new trial upon the grounds:—*First*, that the note, by reason of the stipulations contained in it to pay attorney's fees in the event that it is sued upon, renders the same nonnegotiable; *second*, the court erred in permitting plaintiffs to discontinue as to Mulhall & Scaling, the indorsers.

*W. L. Crawford, M. L. Crawford,* and *L. F. Smith,* for plaintiffs.

*S. Robertson* and *C. L. Potter,* for defendants.

PARDEE, J. The note sued on was made in Texas, and was made payable in Texas. In that state it is a valid contract, and its stipulations can be enforced in the courts. *Miner* v. *Paris Ex. Bank,* 53 Tex. 559; *Roberts* v. *Palmore,* 41 Tex. 617. Therefore all questions of usury, public policy, costs, and penalties are eliminated from this case, and no point is left for discussion, save the question of the negotiability of the note. And this last question is one arising under the law-merchant, where the courts of the United States are not bound by the decisions of the local courts under local statutes, but rather by the general principles of the commercial law. As shown by the note of Mr. Adelbert Hamilton to the case of *Merchants' Nat. Bank* v. *Sevier,* 14 FED. REP. 662, the weight of authority is in favor of the negotiability of instruments containing stipulations similar to those contained in the one here sued on. And, on principle, why should such instruments not be negotiable? The amount to be paid at maturity is fixed and certain.

As to what amount is to be paid in case of dishonor, and after maturity, there may be uncertainty, depending upon contingencies. Is not the same true of every promissory note negotiable by the law-

merchant? The simplest one in form will carry with it an obligation to pay protest fees and interest in case of dishonor. The protest fees are contingent upon protest being made, and upon the number of indorsers notified. The interest payable is contingent upon time.

Bills of exchange, which, in the matter of certainty of amount, stand upon the precise footing of promissory notes, carry with them an implied contract in case of dishonor to pay notarial expenses and interest, (and in case of foreign bills payable abroad,) re-exchange and expenses besides. That makers of promissory notes may make stipulations affecting their liability and the remedies to be taken against them in case of dishonor, and after maturity, without destroying the negotiable character of the notes, seems to be well settled. A note in the usual form to which is added, "Waiving right of appeal and of all valuation and exemption laws," is negotiable. *Zimmerman* v. *Anderson,* 67 Pa. 421; *Woollen* v. *Ulrich,* 64 Ind. 120. So is one with a power of attorney to confess judgment attached. *Osborn* v. *Hawley,* 19 Ohio, 130; *Cushman* v. *Welsh,* 19 Ohio St. 536; *Kirk* v. *Ins. Co.* 39 Wis. 138. So is one directing the appropriation of the proceeds of the note. *Treat* v. *Cooper,* 22 Me. 203. Likewise a stipulation may be made that no interest shall accrue prior to a certain date. *Helmer* v. *Krolick,* 36 Mich. 371. Or, if not paid at maturity, the note shall bear interest at an increased rate. *Houghton* v. *Francis,* 29 Ill. 244; *Towne* v. *Rice,* 122 Mass. 67; *Parker* v. *Plymell,* 23 Kan. 402.

In *Towne* v. *Rice, supra,* a note in the terms following was held to be negotiable:

"$11,520.42. BOSTON, July 1, 1873.

"Four months after date we promise to pay to Louis Rice, receiver, or order, eleven thousand five hundred twenty and 42-100 dollars, for value received, with interest at the rate of 2 per cent. per month after due, having deposited with the holders as collateral security, with authority to sell the same at the brokers' board, or at public or private sale, at his option, on the non-performance of this promise, and without notice, (23) twenty-three receiver's certificates of indebtedness, $1,000 each, of the Alabama & Chattanooga Railroad."

In *Arnold* v. *Rock River V. U. R. Co.* 5 Duer, 207, in addition to above, the note provided that a person, not the promisee, should hold and sell the collateral security, and this stipulation in addition:

"And in case the proceeds thereof, after paying the principal and interest thereon with all expenses of sale, shall be insufficient, we hold ourselves bound to pay the balance on demand;" and this note was held negotiable.

In all the foregoing instances of notes and bills of exchange, the amount to be paid at maturity was certain; the collateral or additional contract, embodied in the instrument or supplied by the law, relating solely to the amount promised to be paid, and in the contingency of dishonor, and expenses thereby incurred. Now, if negotiable instruments may carry with them, either as "ballast" or "baggage," a collateral contract in case of dishonor to pay reduced or increased interest, to waive delays and homestead exemptions, to confess judgment, to appropriate the proceeds, to sell collateral securities, to pay (in cases of bills) re-exchange and expenses, all without losing their negotiable character, there is no principle founded in reason which shall declare a promissory note to be not negotiable because it contains a collateral contract that in case of dishonor the maker shall pay the expenses directly resulting from his own miscarriage or default.

It seems to me, both on principle and authority, we properly ruled on the trial of this case that the note sued on was negotiable. If the note was negotiable the plaintiffs, who are innocent holders, may enforce the stipulation for attorneys fees against the maker. *Hubbard* v. *Harrison,* 38 Ind. 323; *British Bank* v. *Ellis,* 6 Sawy. 97; [S. C. 2 Fed. Rep. 44;] Daniell, Neg. Inst. § 62; and see *Miner* v. *Bank,* 53 Tex. 559.

The remaining question in this case is whether the court ruled correctly on the right of plaintiffs, prior to the trial, to discontinue against indorsers who were not necessary parties defendant to the suit.

The question arises under the Texas practice, (article 1259, Rev. Code,) to the effect:

"The court may permit the plaintiff to discontinue his suit as to one or more of several defendants who may have been served with process, or who may have answered when such discontinuance would not operate to the prejudice of the other defendants."

It is claimed that defendants had made an issue with the indorsers of the note as to fraud in obtaining possession of the same, thereby making the indorsers primarily liable, remitting defendants to the position of sureties, and, under the articles 3662 to 3668 of the Texas Code, defendants had the right to litigate that issue in the suit, brought by plaintiffs against both makers and indorsers.

It is conceded that plaintiffs need not have sued the indorsers, but having done so it is urged that they must now stand by and await indefinite litigation in no wise affecting them or their interests. The

position of the parties as makers, indorsers, and holders of negotiable paper cannot be affected in this court by the Texas statutes in relation to principal and surety.

Under the law-merchant, which in this court controls the liabilities of the parties, the Addingtons stand to the plaintiffs in the position of principals in the note sued on, and the plaintiffs ought not, against their consent, be dragged off into a litigation to determine the fraud between the makers and indorsers. The discontinuance does not interfere with the rights of the defendants to pursue the indorsers who may have defrauded them, and therefore I do not think that legally it operated to their prejudice. And I understand this ruling to be in accord with the practice in the state courts, as declared by the supreme court of the state. See *Shipman* v. *Allee,* 29 Tex. 20; *Cook* v. *Phillips,* 18 Tex. 31; *Austin* v. *Jordan,* 5 Tex. 130; *Dean* v. *Duffield,* 8 Tex. 237; *Horton* v. *Wheeler,* 17 Tex. 55. These cases declare the rule—

"That where a defendant need not have been joined, and the liability of the defendants is such that an action can be maintained against the others without joining him, the plaintiff may enter a *nolle prosequi* as to such defendant, and have his judgment against the others."

For all the foregoing reasons the application for leave to file a motion for a new trial is denied.