## In re ROCHE.

### SMITH v. MORTGAGE & DEBENTURE CO., Limited.

(Circuit Court of Appeals. Fifth Circuit. May 1, 1900.)

#### No. 889.

1. BANKRUPTCY—APPEALS—APPEALABLE ORDERS.

Where a mortgage creditor of a bankrupt proves his claim as a secured debt, including the amount stipulated to be paid as an attorney's fee in case of foreclosure, but the latter item is disallowed by the referee, a decision of the district court, on review of such ruling of the referee, reversing his action and ordering the allowance of the attorney's fee, is a "judgment allowing a debt or claim," within the meaning of Bankr. Act 1898, § 25, subd. 3, and is therefore appealable to the circuit court of appeals.

2. SAME—WHO MAY APPEAL.

An appeal from a judgment of the district court sitting in bankruptcy, allowing or rejecting a debt or claim of a creditor of the bankrupt, may be taken by any party injured or affected thereby, including another creditor of the bankrupt whose share of the estate will be directly increased or diminished by the decision of the question at issue.

3. SAME—PROVABLE DEBTS—ATTORNEY'S FEE TO MORTGAGE CREDITOR.

Where a mortgage contains an agreement for the payment of an attorney's fee of 10 per cent. of the amount of the debt, if the mortgagee should elect or it should become necessary to foreclose the mortgage by suit or proceedings in court, and the mortgagor becomes bankrupt, and the creditor proves his claim in the bankruptcy proceedings as a secured debt, and the property covered is sold by the trustee in bankruptcy at private sale under order of the court, such attorney's fee cannot be allowed and paid to the creditor out of the proceeds of sale, in addition to the principal and interest of the debt; the same not having become due and payable according to the contract made by the parties.

Appeal from the District Court of the United States for the Northern District of Texas.

The appeal in this case was taken by John P. Smith, receiver of the City National Bank of Ft. Worth, Tex., from an order made by the district judge allowing, in the Eugene Roche bankruptcy proceeding pending before him, an attorney's fee of $575 to the Mortgage & Debenture Company, Limited, of London, England. On the 3d day of April, 1894, the bankrupt, Eugene Roche, and his wife, executed to the New England Loan & Trust Company their first-mortgage bond for the sum of $5,750 borrowed money. To secure the payment of the money they executed on the same day a deed of trust to J. W. Bartlett, trustee, conveying to the latter in trust, a tract of about 630 acres of land. The bond was assigned by the New England Loan & Trust Company to the Farmers' Loan & Trust Company, and by the latter duly transferred and assigned to the appellee, the Mortgage & Debenture Company of London, England. Subsequently, in February and March, 1895, Roche borrowed from the City National Bank of Ft. Worth, of which the appellant Smith is the receiver, two several sums, aggregating $3,794.90, for which he gave his two promissory notes, and to secure the payment of the same he executed a second deed of trust to N. Harding, trustee, by which he conveyed in trust to Harding the land previously mortgaged to J. W. Bartlett to secure the debt due to the appellee. Roche, later on, mortgaged the same land to several other persons; but, as the sum realized from the sale was insufficient to wholly satisfy the two prior mortgages, the further consideration of the junior ones becomes immaterial. Roche having been adjudicated a bankrupt, the appellee, by its attorney, F. W. Bartlett, filed proof of its claim with the referee, who allowed the entire indebtedness, principal and interest, but excepted out of the allowance the attorney's fees. The claim of the City National Bank was also proved up and allowed for the principal sum due and interest thereon. Upon the application of the trustee of the bankrupt's estate, an order was made by the referee authorizing the real estate embraced in the deeds of trust to be sold at private sale. The sum realized at the sale was $9,800, and the trustee, under an order of the referee, paid out of the proceeds the entire claim of the appellee, except the attorney's fees, and also made a partial payment of $1,000 on the claim of the City National Bank, leaving a large balance due the bank. A sufficient amount was retained in the hands of the trustee in bankruptcy to pay the attorney's fee claimed by the appellee, if it should be ultimately adjudged that it was a valid and subsisting indebtedness against the bankrupt's estate. The question of the allowance of the attorney's fees thereafter again came on for hearing before the referee, who entered the following order disallowing the claim: "Now, after consideration, it is ordered that the $575 attorney's fees claimed in said proof of debt be disallowed; that the proof of debt in other respects stand as allowed." The appellee objected to the rejection of the claim, and the question was certified to the district judge for review. Upon consideration of the matter, Judge Meek set aside the disallowance made by the referee, and passed the following order: "I am of the opinion that the attorney's fee provided by the terms of the mortgage from Eugene Roche to the Mortgage & Debenture Company, Limited, should be allowed as part of the debt secured by said mortgage. It is therefore ordered that the order heretofore entered by the referee herein, disallowing the same, be set

aside, and the referee is directed to proceed in conformity with the views herein expressed." From the order thus made, Smith, as receiver of the City National Bank, has appealed to this court.

B. F. Jonas, E. B. Kruttschnitt, H. M. Chapman, Tillman Smith, and Thos. F. West, for appellant.

F. W. Bartlett, for appellee.

Before PARDEE and SHELBY, Circuit Judges, and MAXEY, District Judge.

MAXEY, District Judge, after stating the case, delivered the following opinion:

The appellee has made a motion to dismiss the appeal in this case on the following grounds:

"(1) The judgment appealed from is a judgment of the court of bankruptcy, made in the exercise of its summary jurisdiction, adjudging the amount due on a secured claim, and is not a judgment allowing or rejecting a claim, within the meaning of section 25 of the bankruptcy act approved July 1, 1898, conferring appellate jurisdiction on this honorable court. (2) Because said section 25 does not authorize an appeal to be taken by one creditor from a judgment allowing a claim of another creditor."

We think that the order allowing the claim for attorney's fees was a judgment allowing a claim of over $500, and that an appeal would lie therefrom under the twenty-fifth section of the act of 1898, which authorizes an appeal to be taken "from a judgment allowing or rejecting a debt or claim of five hundred dollars or over." Loveland, Bankr. p. 801. The act of 1867, in providing for appeals in similar cases, was to the effect:

"And any supposed creditor, whose claim is wholly or in part rejected, or an assignee who is dissatisfied with the allowance of a claim, may appeal from the decision of the district court to the circuit court for the same district." Rev. St. § 4980.

Under this statute there was strong reason for contending that an appeal from a judgment allowing a claim could only be made by an assignee dissatisfied therewith. The act of 1898 is silent as to the party who may take an appeal on the allowance or disallowance of the claim. The omission of the provision above quoted from the act of 1867 is significant, and we are of opinion that the intention of the lawmakers was, not to restrict the right of appeal, but to leave in force the general rule that, where an appeal lies from any judgment or decree, the same may be taken by any party or person injured or affected by the decree or judgment. The record in this case shows that the appellant, as a creditor of the bankrupt, is directly interested in the judgment complained of, not only as a general creditor of the bankrupt, but as having a special lien on the sum in the hands of the trustee. The motion to dismiss the appeal is overruled.

The several specifications of error relied upon by the appellant may be embodied in the following proposition: The court erred in allowing the claim of $575 as attorney's fees, because by the terms of the contract subsisting between Roche, the bankrupt, and the appellee, the fees had not become due and payable.

It is not questioned by counsel for the appellant that, under the

laws of Texas, stipulations for the payment of reasonable attorney's fees are valid and binding upon the contracting parties, Adams v. Addington, 16 Fed. 89; Miner v. Bank, 53 Tex. 559; Washington v. Bank, 64 Tex. 4; Martin Brown Co. v. Perrill, 77 Tex. 200, 13 S. W. 975; Neese v. Riley, 77 Tex. 348, 14 S. W. 65. And it is also settled law that, upon a question affecting the validity and effect of a contract made and to be performed in a state, concerning land in such state, the laws of the state must govern in proceedings to enforce the contract in a federal court held within the state. Bendey v. Townsend, 109 U. S. 665, 3 Sup. Ct. 482, 27 L. Ed. 1065. The contract being valid according to the laws of Texas, it only remains for us to decide how it shall be construed; and that inquiry, as stated by counsel for the appellee, arises upon the following question, certified by the referee to the district judge:

"Is the owner of the bond entitled to such attorney's fees on reduction of the security to money by proceedings in bankruptcy and the payment to him of the principal and interest due on such bond?"

To the consideration of the question thus presented, our attention will be confined; and it is insisted by counsel for the appellee that, upon the reduction of the security to money by the sale of the real estate described in the deed of trust and the payment to the appellee, out of the proceeds of the sale, of its principal debt and interest, the attorney's fees became payable, because the sale made by the trustee in bankruptcy was in legal effect the equivalent of a foreclosure of the trust deed contemplated by the parties to the contract. In construing the contract, the intention of the parties must prevail, and this intention should be derived from the language employed. The contract must stand as the parties made it. A new contract cannot be made for them by the court. In a case construing a contract for attorney's fees, it was said by Mr. Justice Brewer (now associate justice of the supreme court) in Jennings v. McKay, 19 Kan. 121:

"The mortgagee claimed that he was entitled to a judgment for the $50 attorney fee, or, at least, to such an amount thereof as would be proportioned to the work already done in the suit; and, upon the refusal of the district court to allow this claim, he brings the question here for our consideration. The allowance of attorney fees in the foreclosure of a mortgage is based upon contract. Stover v. Johnnycake, 9 Kan. 367; Coburn v. Weed, 12 Kan. 182. The court can allow none unless the mortgagor has stipulated to pay them, and can allow no more than he has stipulated to pay, and under no other circumstances than those under which he has stipulated to pay. In other words, the court can make no new contract for the parties. It simply enforces the contract already made. Again, it is a matter of common knowledge that, as a rule, the form of the mortgage is determined by the mortgagee. He refuses to complete the loan until the terms of the instrument are made to suit his wishes, even where he does not himself prepare the mortgage. Hence, while the rule is not so strict against him as in construing legislative grants against the grantee, yet it is fair and reasonable to construe doubtful language against, rather than in favor of. him; and this upon the general principle that he who prepares an instrument by which he is to acquire rights will seek to express fully and clearly all the rights he intends to secure."

And at page 123 the following language was used:

"If no contract had been made concerning attorney fees, then, no matter how equitable it might be that he should pay the fees of counsel employed by the mortgagee, none could be recovered. We may not enlarge his contract. We may not enforce against him a liability which he never assumed, or con-

strue a doubtful expression, prepared by the mortgagee, so as to impose a burden which, it may be, he ought to have assumed, but which, if expressly named, he might have refused to assume."

Upon a like principle the supreme court refused to allow an attorney's fee, in a suit brought to foreclose a mortgage, where the trust deed provided that, in the case of a sale by the trustee at public auction upon advertisement, all costs, charges, and expenses of such advertisement, sale, and conveyance, including commissions, such as were at the time of sale allowed by the laws of Illinois to sheriffs on sale of real estate on execution, should be paid out of the proceeds. In that case (Fowler v. Trust Co., 141 U. S. 407, 408, 12 Sup. Ct. 7, 35 L. Ed. 793), Mr. Justice Harlan, speaking for the court, said:

"This provision does not impose upon the borrower the burden of paying to the lender a solicitor's fee where a suit is brought for foreclosure. The commissions referred to in the deed are allowed only where the property is sold upon advertisement by the trustee without suit. The trust deed made no provision for a solicitor's fee to the company in the event suit was brought. That a suit became necessary because of the refusal of the trustee to act is no reason for taxing such a fee against the mortgagor."

See, also, Hardwick v. Bassett, 29 Mich. 17; Bedell v. Security Co., 91 Ala. 325, 8 South. 495.

Hence the fact that one proceeding may be the equivalent of the other is not sufficient. The fees, to become a charge against the debtor or his property, must mature according to the contract of the parties. It follows that if the attorney's fees in this case became payable only upon the foreclosure of the trust deed by suit in the usual form, as by bill in equity, or, according to the practice in Texas, by petition praying for a foreclosure, with all parties claiming adversely before the court, they would not be collectible in a proceeding where the trustee in bankruptcy had sold the property and distributed the proceeds, although the same end might have been attained in securing the payment of the debt of the mortgagee. In other words, although the one proceeding might have been the equivalent of the other, and accomplished the same purpose, still the attorney's fees could only be recoverable upon the happening of the very contingency as to which the parties had contracted. What, then, is the meaning of the stipulation used by the parties in this case? In order to arrive at their intention, the entire instrument should be considered. The deed of trust contains the following stipulation touching the payment of attorney's fees:

"And should such holder elect, or should it become necessary, to foreclose this deed of trust by suit or proceedings in court, then the first party will pay as attorney's fees ten per centum on the amount of the indebtedness secured hereby."

The instrument, after providing for a sale of the property by the trustee upon publication of notice, directs the application of the proceeds as follows:

"First, to all proper expenses of advertising, selling, and conveying, and a commission to the trustee of five per cent. upon the entire amount due and unpaid."

Why this distinction as to compensation between the attorney and trustee? Why pay the former 10 per cent. and the latter 5? Obvi-

ously, for the reason that the services of the attorney were supposed to be of a more delicate and exacting nature, demanding increased labor, and requiring an accurate knowledge of law and intimate acquaintance with the rules of judicial procedure in initiating and prosecuting to conclusion a foreclosure suit. The parties contemplated that the services of an attorney might become necessary to foreclose the deed of trust, and that such services deserved a greater compensation than those of the trustee. Had they contemplated the bankruptcy of the mortgagor when the deed of trust was executed, would the deed have provided a 5 per cent. commission for the trustee and 10 per cent. for the attorney simply for filing proof of the claim with the referee in bankruptcy? We think not; and, if the parties would not have so bound themselves, the court should not write into the contract an obligation which, if expressly named, one of them at least, would have refused to assume. Looking to the intention of the parties, as illustrated by the language employed, we think that the attorney's fees would mature and become payable when, and only when, the holder of the indebtedness should elect, or when it should become necessary, to foreclose the deed of trust by bill in equity if in the United States courts, or by petition in the usual and ordinary form if suit were filed in the courts of the state. As the appellee did not elect, as it might have done, to foreclose the deed of trust by suit in the usual form, and as it did not become necessary to thus foreclose by suit or proceedings in court, because the property was sold by the trustee in bankruptcy and the debt of the appellee discharged, the contingency contemplated by the parties did not occur. The attorney's fees have not matured, and hence they should not be chargeable against the estate of the bankrupt. This conclusion is strengthened by still another clause in the deed of trust:

"And the trustee or holder may, if he sees fit, on occurrence of default herein mentioned, sue for and obtain personal judgment on said note or coupons, and do all lawful execution thereon before or in addition to selling said property, or may foreclose in court in the usual form."

Here, then, the intention of the parties is clearly and unambiguously expressed. Foreclosure is plainly provided for, but it must be a foreclosure in court in the usual form.

The conclusion reached by us is thought not to be inconsistent with the ruling made in the cases of Simmons v. Terrell, 75 Tex. 275, 12 S. W. 854, Morrill v. Hoyt, 83 Tex. 59, 18 S. W. 424, and Davidson v. Vorse, 52 Iowa, 384, 3 N. W. 477, relied upon by the appellee. The court in those cases ascertained the intention of the parties from the language employed by them in the contracts. We here follow the same rule; but as the contracts construed are altogether dissimilar a different conclusion must inevitably follow.

The order appealed from is reversed, and the cause is remanded, with directions to the court below to disallow the claim of attorney's fees interposed by the appellee, and to order the sum reserved for the payment thereof to be applied as a partial payment on the principal of the mortgage indebtedness proved by the appellant against the bankrupt's estate.